

**SO ORDERED.**

**SIGNED this 21 day of December, 2005.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | No. 05-17885 |
| JUDITH DIAN PIERCE, | ) | |
| | ) | Chapter 13 |
| Debtor | ) | |

### MEMORANDUM

This case came before the court for a hearing on the Chapter 13 trustee's objection to confirmation of the debtor's Chapter 13 plan. After considering the plan and the objection thereto, the court will sustain the trustee's objection and, at the debtor's request, afford her 10 days within which to modify the plan to cure the deficiency discussed below.

The debtor filed the petition commencing this case on November 4, 2005. Her Schedule I reflects net income of $2,419.81 per month and her Schedule J reflects monthly living expenses (excluding her car payment) of $1,977.06, leaving a balance of $442.78 per month. The debtor's

Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income for Use in Chapter 13 indicates that the applicable commitment period is three years and that disposable income is not to be determined under 11 U.S.C. 1325(b)(3). These conclusions have not been challenged. The debtor's Chapter 13 Plan proposes to pay the trustee, for distribution to creditors, the sum of $265.85 per month for 60 months.[1] The plan is a "remainder plan," i.e., unsecured creditors would receive a pro rata distribution of the funds remaining after the payment of administrative expenses and payments on the secured car loan of $209.95 per month. According to Schedule E, there are no unsecured priority claims, and Schedule F discloses unsecured nonpriority claims totaling $17,472.87.

The trustee objects to confirmation of the debtor's plan because the debtor is not paying unsecured creditors all disposable income received by her during the first three years of the plan as required by 11 U.S.C. § 1325(b). The debtor contends that she is paying unsecured creditors three years' worth of disposable income, albeit over a five year period. She argues that such an arrangement is permitted under the Bankruptcy Code.

Section 1325(b)(1) provides as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

---

[1] The plan actually proposes payments of $61.35 per week. Multiplying that figure by 52 weeks per year and dividing by 12 months per year produces the monthly payment of $265.85.

>    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). There is no dispute that unsecured claims would not be paid in full, so subparagraph (A) is inapplicable; nor is there any dispute that the "applicable commitment period" is three years under the facts of this case. *See id.* § 1325(b)(4). Furthermore, there is no question that the debtor's projected disposable income during the first three years of the plan exceeds the distributions to be made to unsecured creditors during that period: unsecured creditors would receive approximately $55 per month until the secured claim is satisfied (after about the first 3½ years of the plan) and thereafter would receive the full monthly plan payment less the trustee's fee.

The debtor takes the position that the disposable income shortfall over the first 36 months of the plan would be "made up" over the last 24 months of the plan. She argues that, because she is only required to pay three years' disposable income to unsecured creditors, she may retain a portion of that income during that period so long as she remits the amount withheld to unsecured creditors by the end of the term of the five-year plan. This argument, however, overlooks the plain meaning of the statute. Section 1325(b)(1)(B) requires that *all* the debtor's projected disposable income *received* in the applicable commitment period *be applied* to unsecured creditors under the plan. The debtor's take-home pay is $2,419.81 per month, while the "amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor" (including the secured car payment for which the plan provides) total $2,187.01 per month. Accordingly, it is projected that she will *receive* disposable income of $232.80 per month. However,

only about $55 per month will be "applied to make payments to unsecured creditors under the plan." The disposable income test is not satisfied.

The court recognizes that some decisions have held that a plan may satisfy the disposable income test by "making up" a disposable income shortfall accruing during the first 36 months of a plan over subsequent months or years with interest.[2] However, none of those decisions considers the language of the statute requiring the commitment to the plan of all disposable income "received" during the 36-month period. The Code does not provide that an "amount equal to 36 months of disposable income" be remitted to unsecured creditors over the term of the plan; rather, it requires "all" of the disposable income actually "received" during the applicable commitment period to be applied to unsecured creditors' claims under the plan. *See In re Gilliam*, 227 B.R. 849, 851-52 (Bankr. S.D. Ind. 1998). In this case, the debtor proposes to take nearly 75% of the disposable income she receives over the first three years of the plan and spend it on things other than unsecured claims, in effect forcing creditors to lend her money that she promises to pay back later. If the debtor's case is dismissed after three years, either by design or as a result of an involuntary change in the debtor's financial situation, unsecured creditors would have received as little as $1,980 when the disposable income received by the debtor during the preceding three years would have totaled nearly $8,400. The language of § 1325(b)(1)(B) does not permit that.

---

[2] These cases were decided under § 1325(b) as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-9, 119 Stat. 23, but the language pertinent to this issue has not changed: while prior law specified a three-year period rather than a three- or five-year "applicable commitment period" depending on household income (which period is three years in this case) and while prior law specified that all disposable income for the three-year period be applied to make payments under the plan without specifying that the payments were to go to unsecured creditors, both versions of the statute require the commitment to creditors of all disposable income "to be received" during the pertinent period.

Finally, even if § 1325(b)(1)(B) did permit the plan proposal in this case, the court would be required to find "cause" for extending payments over a period longer than three years, 11 U.S.C. § 1322(d)(2). Such cause cannot be found in this case when the purpose of the longer period is to allow the debtor to keep 75% of available funds away from her unsecured creditors for three years, thus increasing the risk to the unsecured creditors that they will ever be paid the amount they are entitled to receive. *See*, *e.g.*, *In re Lindsey*, 122 B.R. 157, 159 (Bankr. M.D. Fla. 1991) ("The purpose of [§ 1322(d)] is to allow and encourage longer plans only where necessary to pay substantial dividends to creditors.").

For the foregoing reasons, a separate order will enter denying confirmation of the debtor's proposed plan and allowing her 10 days within which to file an amended plan, failing which this case may be dismissed without further notice or hearing.

###